# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 17 2018, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEY FOR APPELLEE

Betty M. Harrington
Harrington Law, P.C.
Danville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of G.S.

S.S.,
*Appellant-Petitioner,*

v.

C.S,
*Appellee-Respondent.*

October 17, 2018

Court of Appeals Case No.
18A-JP-1306

Appeal from the Hendricks
Superior Court

The Honorable Mark A. Smith,
Judge

Trial Court Cause No.
32D04-0904-JP-2

**Bailey, Judge.**

# Case Summary

[1] S.S. ("Father") and C.S. ("Mother") have one child together, G.S. ("Child"). After Father—who has struggled with substance abuse—moved from Indiana to Florida, the trial court entered a parenting-time order granting Father the ability to exercise parenting time only in Indiana. Father now appeals, arguing that the trial court abused its discretion by restricting parenting time in this manner because the trial court failed to make a specific finding under Indiana Code Section 31-14-14-1 that would support the burdensome restriction.[1]

[2] We remand with instructions that the trial court either (1) enter an order with findings that support a parenting-time restriction or (2) enter an order without a restriction. We also instruct the trial court to correct certain scrivener's errors.

# Facts and Procedural History

[3] Child was born in October 2005. Mother had primary physical custody, and, in 2015, the trial court entered an order granting Father unsupervised parenting time in accordance with the Indiana Parenting Time Guidelines. Thereafter, Father typically exercised his parenting time at the residence of his mother ("Paternal Grandmother"), not far from Mother's residence. In April 2017,

---

[1] Mother and Father direct us to Indiana Code Section 31-17-4-2. However, because this case arises from the paternity context and not the dissolution context, it appears that the applicable statute is Indiana Code Section 31-14-14-1, which is substantially similar to Indiana Code Section 31-17-4-2. *See In re Paternity of K.J.L.*, 725 N.E.2d 155 (Ind. Ct. App. 2000) (noting the potential for statutory differences in each context).

Father moved to Florida and filed a Notice of Intent to Relocate. The next month, both Father and Mother moved to modify parenting time. During the pendency of the motions, Father traveled to Indiana to exercise parenting time.

[4] The trial court eventually held a hearing in May 2018, after which it entered an order granting Father "unsupervised parenting time in Indiana, at [Paternal Grandmother's] home, pursuant to the Indiana Parenting Time Guidelines."[2] Appellant's App. Vol. II at 93. Accompanying the order were findings and conclusions, among them, that Father "has a history of abusing alcohol and admits he is an alcoholic." *Id.* at 91. The trial court found that Child—who was twelve years old as of the hearing—"has a heightened awareness of the signs of a person under the influence of alcohol because he has been around [Father] while [Father] was under the influence," and that Child "worries about what would happen if he were in Florida for parenting time and [Father] were drinking because he does not know anyone there and would not know what to do." *Id.* The trial court further found that

> [Father]'s request for unsupervised parenting time with [Child] in Florida is not in [Child's] best interest. [Father] has, at most, just over 90 days' sobriety from alcohol. [Father] has a history of not being honest regarding his abuse of alcohol. The parties live 12 hours apart. There are no safeguards available to [Child] in

---

[2] Father points out that the order refers to Child's *maternal* grandmother, a reference that appears to be a scrivener's error, as maternal grandmother was not mentioned at the hearing (although the guardian ad litem report also appears to substitute maternal grandmother for Paternal Grandmother). In her brief, Mother appears to agree that the court meant Paternal Grandmother, describing the order as granting "parenting time . . . at paternal grandmother's home in Indiana." Appellee's Br. at 7. When quoting or referring to the trial court's order, we substitute Paternal Grandmother for any reference to maternal grandmother.

Florida like the safeguards he has while having parenting time with [Father] at [Paternal Grandmother's] house, a few minutes from [Mother's] home. Even with a Soberlink device,[3] the distance does not allow for a rapid response by [Mother] or [Paternal Grandmother] in the event of an emergency. [Father] has not shown an understanding that long[-]term sobriety requires more than sticking his big toe in the recovery pool. He provided weekly AA attendance meeting sheets for the period between April 2017 and September 2017, yet he still drank for multiple days while in Mexico in February 2018 and really showed no regret or remorse. He now claims to be attending AA meetings twice per week. He offered no evidence of the same aside from his self-serving testimony, which the Court finds highly questionable given his history of dishonesty about his alcoholism. While he is to be commended for 90 days clean, [Father] must demonstrate that he is willing to submerge his body into recovery, long term.

*Id.* at 93.

[5] Father now appeals.

# Discussion and Decision

[6] "This is ultimately a decision about parenting time, which requires us to give foremost consideration to the best interests of the child." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013) (quotation marks omitted). Furthermore, we

---

[3] There was evidence that a handheld Soberlink device would enable Father to take breath tests at certain times while Child was in his care, and that, depending on the level of subscription to the service, those results could be immediately transmitted to Mother via text message or e-mail.

review parenting-time decisions for an abuse of discretion, *id.*, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *In re Guardianship of B.H.*, 770 N.E.2d 283, 288 (Ind. 2002). Here, neither Father nor Mother requested special findings and conclusions thereon. Nonetheless, where "provided by . . . statute," the "court shall make special findings of fact without request," Ind. Trial Rule 52(A), and "[t]he court's failure to find upon a material issue upon which a finding of fact is required . . . shall not be resolved by any presumption and may be challenged," T.R. 52(D). Where findings are otherwise *sua sponte*, we look to "whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). "Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence." *Id.* at 123-24.

[7] In conducting our review, we "neither reweigh the evidence nor judge the credibility of the witnesses," *Perkinson*, 989 N.E.2d at 761, and we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," T.R. 52(A). We "shall not set aside the findings or judgment unless clearly erroneous." *Id.* A trial court's findings are clearly erroneous when the record contains no facts to support them either directly or by inference; a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016).

[8] Both the instant parenting-time order and the previous order provide that Father is to receive parenting time in accordance with the Indiana Parenting Time Guidelines. However, the instant order specifies that Father—who now lives in Florida—is to exercise his parenting time in Indiana at the residence of Paternal Grandmother. Indiana Code Section 31-14-14-1(a) provides:

> A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might:
>
> > (1) endanger the child's physical health and well-being; or
> >
> > (2) significantly impair the child's emotional development.

[9] Father asserts that the trial court failed to make an express finding that would support the burdensome geographic constraints on his parenting time. Father correctly points out that Indiana courts have interpreted the word "might" in this context to mean "would." *See Perkinson*, 989 N.E.2d at 764. Thus, according to Father, reversal is warranted because the court failed to expressly find that parenting time in Florida would (1) endanger Child's physical health and well-being; or (2) significantly impair Child's emotional development.

[10] Mother appears to concede that the trial court "did not expressly" make a finding under the statute. Appellee's Br. at 15. However, Mother asserts that the other findings nonetheless support the parenting-time restriction. She directs us to *J.M. v. N.M.*, 844 N.E.2d 590 (Ind. Ct. App. 2006), *trans. denied*, in which this Court affirmed a parenting-time order that restricted a parent to only

supervised parenting time. Although that restrictive order lacked an express finding under the statute, the trial court had specifically found that the parent's behavior was detrimental to the mental health, well-being, emotional stability, and development of the child—a finding that this Court determined was "tantamount to a finding that unsupervised parenting time would significantly impair . . . emotional development." *J.M.*, 844 N.E.2d at 600.

[11] Here, however, the court appeared to express concern about Child's welfare in light of Child's past experiences with Father in addition to Father's history of substance abuse, dishonesty, and relatively brief sobriety—but the court fell short of finding that Child *would be* endangered or developmentally impaired by time with Father in Florida. Although the court generally found that time in Florida was not in Child's best interests, the order reads as though Child *might be* endangered—speculation that does not support the burdensome restriction of conducting all parenting time more than 700 miles from Father's residence. Thus, despite Mother's assertion that the evidence and other findings would collectively support the requisite statutory determination, the order ultimately does not contain a finding that is specific enough to garner statutory support.

[12] Mother argues, in the alternative, that if the order lacks a requisite finding, then this Court should remand to give the trial court the opportunity to make that finding—a path this Court has taken in the past. *See, e.g.*, *In re Paternity of V.A.M.C.*, 773 N.E.2d 359 (Ind. Ct. App. 2002) (modifying instructions to the trial court on rehearing, giving the court the opportunity to (1) enter an order with findings that would support the parenting-time restriction or (2) enter an

order without a restriction). We agree that remand is appropriate. *See* Ind. Appellate Rule 66 (permitting this Court to "order correction of a judgment or order" and "grant any other appropriate relief"). We accordingly remand with instructions that the trial court either (1) enter an order with findings sufficient to support a restriction under Indiana Code Section 31-14-14-1 or (2) enter an order without any such restriction. We also instruct the trial court to address all references to maternal grandmother, correcting the order where appropriate.

[13] Remanded.

Mathias, J., and Bradford, J., concur.